Curia, per

Butler.
The first thing in this ease is to ascertain the character and decide on the effect of the special plea in bar filed by the defendant. The plea sets out a special agreement, by which it appears that the plaintiff had delivered up to the defendant certain slaves which came into his possession at the death of his intestate, and had retained for a specific purpose two others ; and that defendant was to pay such a sum for the hire of those he took as should be determined on by the counsel of the parties, or by the Court of Equity ; and the plea alleges that no sum had been agreed on by the counsel, nor liad the plaintiff filed his bill in the Court of Equity. But it does not aver that defendant had applied to counsel to have the matter adjusted himself. The agreement does not indicate the time of adjustment, or specify the names of the counsel who were to act as referees, nor does the plea aver any matter of the kind. It seems to have been the object of the parties to submit the matter in controversy to arbitration ; and this is the true character of their agreement. An agreement to arbitrate, or a bond to submit to arbitration, may be the subject of a suit, where the damages stipulated, or the penalty, will authorize a recovery. But such an agreement* or bond would not deprive either party of his remedy in the Courts, or oust them of their jurisdiction in regard to the matter in dispute. This agreement is *42 indefinite and uncertain in its terms and provisions, and whether either party could have recovered any thing in an action brought upon it, it is now unnecessary to determine. But we are all of the opinion that it does not operate as a bar to this action. Since the case of Thompson vs. Charnock, (8 T. R. 139,) it has never been questioned that an agreement to refer all matters in difference to arbitration is not sufficient to oust the Courts of their jurisdiction. This decision has been frequently referred to and approved by the English Judges, both of Law and Equity. (2 Ves. 129; 6 Ves. 815; 2 Atkins. 569.) To determine the other grounds of appeal, we must look at the situation and rights of the parties as they stood at the death of Nicholas Herbemont. At that time it is conceded that the defendant, who represents the remainder men, had a right to take into his immediate possession all the slaves held by the tenant for life, that were not employed in making a crop — such as house servants, artizaus not connected with the farm, &c. ; and that plaintiff had a right to retain till the crop was gathered (or the last day of December,) all the hands that were employed in making a crop. And I take it that all hands that were necessary to, or fairly connected with, the farm, might be retained by him ; no matter what might have been their particular employment at different times. For on a farm, hands must sometimes be engaged at one thing and then at another. The first part of the 23d clause of the Act of 1789, (5 Stat. 111, § 3,) is as follows : “ That if any person shall die after the first day of March in any year, the slaves of which he or she was possessed, whether held for life or absolutely, and who were employed in making a crop, shall be continued on the lands which were in the occupation of the deceased, until the crop is finished, and then be delivered to those who have a right to them.” It was contended by the counsel for the defendant, who argued the case with much learning, that the meaning of crop should be restricted to the cultivation of such things as would have been regarded as emble-ments at common law ; that the fruit of the grape vine, like other fruit growing on trees, could not be regarded as emblements ; *and therefore that those hands that were employed about the vineyard were not engaged in making a crop within the meaning of the law. The ancient notion of emblements was, that he should reap all that he had sown ; and in England it applied particularly to corn and other annual vegetable productions that depended on planting and cultivation. The construction of the Act of ’89, cannot be restricted to such a meaning when it uses the word crop. For in South Carolina the usual crop at the time the Act was passed consisted of tobacco, indigo, rice and Indian corn, which were to be put into the ground after the first of March, when the right of the administrator of a tenant for life attached The slaves were not to be retained to reap and gather a crop which had been planted by the deceased, but which was to be planted and cultivated by his administrator or executor.
Before March, hands are usually employed in clearing, repairing fences, breaking up land, and preparing for a crop ; and it is hands thus employed that are to be retained by the executor — hands employed in the business of agriculture. A vineyard, though not annually planted, requires great preparatory attention as well as much cultivation to bring the fruit to perfection. The product depends on labor and industry in *43 the cultivation of the soil; and I cannot well perceive why there may not be a crop of grapes, as well as any vegetable production depending on cultivation. In England, emblements may be confined to such vegetables as require labor and attention, and may not extend to fruit either growing on trees or vines ; but our Act contemplates such crop as require agricultural labor to bring them to perfection ; and all hands being employed in such labor, whether about a vineyard or a corn field, are liable to be retained by the administrator, after the first of March till the crop is gathered, (or at farthest till the last of December, should the crop not be gathered before that time.) This brings me to the question, has not the plaintiff recovered for more hands than were employed about any crop, and for time beyond the period when the crop was actually gathered? And it appears evident to me he has.; for he has recovered for the hire of Yorick and Moses after the vintage was over, and for George, who was a house servant, and never employed in the crop. The sums allowed for these amount to sixty-eight dollars. Unless the plaintiff will release *this sum, a new trial is ordered; but should he think proper to release that amount, the verdict will stand good, and is affirmed for the balance.
Gregg and Gregg, for the motion. Cheves, contra.
The whole court concurred.